1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10 | HAYTON FARMS INC., a Washington
Corporation, et al.,

11

Plaintiffs,

12

v.

13

14 | PRO-FAC CORPORATION INC., a New
York corporation licensed to do business
in Washington,

15

16

Defendant.

CASE NO. C10-520-RSM

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DISMISS OR TO
MAKE MORE DEFINITE

17

18

## I. INTRODUCTION

19

20

21

22

This matter comes before the Court upon Defendant's Motion to Dismiss Pursuant to

FRCP 12(b)(6) or, In the Alternative, Make More Definite Pursuant to FRCP 12(e).  Dkt. #36.

For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendant's

motion.

23

24

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS OR TO
MAKE MORE DEFINITE - 1

## II. BACKGROUND

Plaintiffs are twenty-six (26) cucumber growers located in Washington and Oregon and are current or former members and shareholders of Defendant Pro-Fac.  Defendant Pro-Fac Cooperative, Inc. ("Pro-Fac") is a cooperative corporation formed in 1960 under the Cooperative Corporations Law of New York to market the agricultural products of its members.  In this action, Plaintiffs bring claims for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, negligent performance of contracts, negligent misrepresentation, conversion, tortious interference, and breach of fiduciary duties.  Dkt. #18.[1] At base, Plaintiffs contend that Pro-Fac was obligated to distribute its earnings proportionately and equitably and failed to do so.  *Id.* at 2.  However, the series of events giving rise to Plaintiff's action began with the sale of a pickle business.

Pro-Fac's subsidiary owned a pickle business in Tacoma, Washington to which Plaintiffs had previously supplied cucumbers.  When the business was sold to Dean Pickle and Specialty Products Company ("Dean") in June of 2000, Pro-Fac entered into a Raw Product Supply Agreement (the "Guaranteed Contract") with Dean.  The Guaranteed Contract required Dean to purchase, and Pro-Fac to continue to supply, cucumbers for a period of ten years.  Plaintiffs allege that they were third-party beneficiaries to the Guaranteed Contract and that they were promised that the contract would allow Plaintiffs to accumulate equity ("CMV credit") in Pro-Fac for a period of ten years.  Dkt. #18, ¶¶ 3.27-32.

The Guaranteed Contract was renegotiated in 2005 to reduce the amount of crops required to be delivered under the Guaranteed Contract.  Then, before the 2008 crop year, Pro-

---

[1] Originally, Plaintiffs sued Pro-Fac and the individual members of its Board of Directors.  The individual defendants were dismissed by stipulation for lack of jurisdiction on August 2, 2010.  (Dkt. #66).

1    Fac negotiated a termination of Guaranteed Contract.  Bay Valley sought the cancellation of the

2    contract and the terms of that cancellation were allegedly negotiated with Pro-Fac without the

3    Plaintiffs' input.  *Id.* at  ¶¶ 3.70-72.  In order to receive a share of the settlement from the

4    cancellation of the contract, Plaintiffs were asked to sign Release Agreements.  The Release

5    Agreements purported to release Defendant from liability from any claims arising before the date

6    of the Release.  Dkt. #36 Exs. 1-24.  Plaintiffs understood that they were not releasing any share

7    of interest in Pro-Fac in the event of any eventual sale or liquidation of Pro-Fac or its subsidiary,

8    and in any case allege the Release Agreements were unconscionable.  *Id.* at ¶¶ 3.77-79.

9        In approximately December of 2009 when Pro-Fac sold its Subsidiary, Plaintiffs learned

10   that they would not be receiving CMV credit for any years beyond the 2007 crop year.  They

11   also learned that Pro-Fac had allegedly improperly given CMV credit to other members through

12   various contracts and arrangements, which had the result of diminishing Plaintiffs' pro rata

13   shares.  *Id.* at ¶ 3.111.

14       Pro-Fac intends to liquidate at the end of 2012 and proceeds from the liquidation will be

15   distributed to current and former members of Pro-Fac based on CMV credit.  Plaintiffs allege

16   that the proceeds from the liquidation are going to be distributed inequitably for a variety of

17   reasons including Pro-Fac's dealings with other members and Plaintiffs' loss of their post-2007

18   CMV shares.  *Id.* at ¶¶ 3.114-124.  Plaintiffs allege damages resulting from Pro-Fac's actions in

19   the form of diminished assets and lost profits.

20       This action was originally filed in Skagit County, Washington and was removed to this

21   Court on March 26, 2010.  Dkt. #1.  The instant Motion to Dismiss was filed by Defendant on

22   July 7, 2010, together with a Motion to Change Venue, in which Pro-Fac requested that this

23

24

1    action be transferred to the Western District of New York.  Dkt. #s 35 & 36.  On November 8,

2    2010, the Court denied Pro-Fac's Motion to Change Venue. Dkt. #73.

3                                         **III. DISCUSSION**

4    **A.  Choice of Law**

5            As an initial matter, the Court must decide what law to apply to Plaintiffs' tort and

6    contract claims.  Pro-Fac asserts that New York law applies to all of Plaintiffs' claims, whereas

7    Plaintiffs argue that Washington law should apply.  A federal district court sitting in diversity

8    applies "the forum state's choice of law rules to determine controlling substantive law." *Patton*

9    *v. Cox*, 276 F.3d 493, 495 (9th Cir.2002).  Therefore, Washington choice of law rules apply.

10           In Washington, "there must be an actual conflict between the laws or interests of

11   Washington and the laws or interests of another state before Washington courts will engage in a

12   conflict of laws analysis." *Erwin v. Cotter Health Centers,* 161 Wash.2d 676, 692, 167 P.3d 1112

13   (2007) (citing *Seizer v. Sessions,* 132 Wash.2d 642, 648, 940 P.2d 261 (1997)).  A real conflict

14   exists where the result of a particular issue is different under the laws of the two states.  *Seizer,*

15   132 Wash.2d at 648.  Where there is no conflict, presumptive local law is applied. *Id.* at 648-49.

16       1.  Negligent Performance of Contracts

17           Here the parties identify a conflict with respect to Plaintiffs' Sixth Cause of Action for

18   negligent performance of contracts.  In New York, a cause of action for "negligent performance

19   of a contract" does not exist.  *Fluhr v. Goldscheider*, 264 A.D.2d 570, 571, 695 N.Y.S.2d 30,

20   31 (N.Y. App. 1999)).  In contrast, a tort by that name does exist under Washington law.

21   *American Nursery Products, Inc. v. Indian Wells Orchards,* 115 Wash.2d 217, 230, 797 P.2d

22   477, 485 (Wash. 1990).

23

24

1    New York courts prohibit claimants from bringing a cause of action for negligence

2    arising out of a breach of contract.   For example, in *Hamilton v. Hertz Corp.*, a plaintiff who had

3    sustained a car accident while in a rented vehicle alleged that she was entitled to relief as a third-

4    party beneficiary to a contract between Hertz and its licensee, from whom she had rented a

5    vehicle.  130 Misc.2d 1034, 1037 (1986).  The contract required the licensee to offer minimum

6    insurance coverage to its drivers for free, but the licensee did not offer said insurance to plaintiff.

7    *Id.*  The plaintiff sued for damages and the court dismissed plaintiff's complaint, fashioning

8    plaintiff's claim as an action for negligent performance of a contract, "which simply does not

9    exist at law." *Id.*  In doing so, it explained, "Even if a breach is willful, where no public right is

10   involved the law imposes no further penalty than if the breach is merely inadvertent." *Id.*

11   (internal citations omitted).  Similarly, in *Megaris Furs, Inc. v. Gimbel Bros., Inc.*, a New York

12   appeals court upheld the dismissal of plaintiffs' cause of action for negligent performance of a

13   contract where plaintiffs attempted to fashion their breach of contract claim as a claim for

14   negligent performance of that same contract.  172 A.D.2d 209, 211 (1991).

15       Plaintiffs' claim in the instant action is distinguishable from the claims at issue in

16   *Hamilton* and *Megaris*.  Plaintiffs here are not asserting a public right arising out of a breach of a

17   private contract between Defendant and another party.  Nor are they alleging that Defendant

18   acted negligently in breaching their contracts with the Plaintiffs.  Their claim does not involve a

19   *breach* of contract at all.  Rather, Plaintiffs allege that the mere fact of Defendant *entering* into

20   contracts with third parties constituted a breach of Defendant's (purportedly, extra-contractual)

21   duties to the Plaintiffs.  *See* Dkt. #18 ¶9.2 ("Defendant[] entered into contracts with parties other

22   than the Plaintiffs.  The Defendant[] negligently performed those contracts and thereby breached

23   their duties to the Plaintiffs.").  In essence, Plaintiffs allegations are that Defendant acted

24

1   negligently – because it owed duties to plaintiffs and breached those duties when it *entered* into

2   contracts with other parties.

3        The Court must construe Plaintiffs' pleading so as to do justice.  Fed. R. Civ. P. 8(e).

4   Although Plaintiffs call their Sixth Cause of Action "Negligent Performance of Contracts,"

5   Plaintiffs' claim is actually a claim for negligence, which is not prohibited under New York law

6   under these circumstances.  The standard for bringing negligence claims against a party with

7   whom a plaintiff has contractual relations is the same under both Washington and New York

8   law.  In both states, a plaintiff can bring a tort claim for conduct arising out of a contractual

9   relationship if it alleges that the defendant owed the plaintiff a duty independent of the contract.

10  *See Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 725 F.Supp. 656,

11  662 (N.D.N.Y.,1989); *American Nursery Prods.,* 115 Wash.2d at 230.  The fact that Plaintiffs

12  inaptly named their sixth cause of action "Negligent Performance of Contracts" is inapposite.

13  Since there is no genuine conflict of law between New York and Washington respecting

14  Plaintiffs' negligence claim, the presumptive local law – in this case Washington law – will be

15  applied to plaintiffs' sixth cause of action.  *See Seizer,* 132 Wash.2d at 648.

16     2.  <u>Statutes of Limitations</u>

17       The parties also identify discrepancies between the two states' statutes of limitations.

18  However, Washington has adopted the Uniform Conflict of Laws-Limitations Act (UCCLA),

19  which provides that a court must first determine which substantive law applies before

20  considering which state's statute of limitations applies.  *See* RCW 4.18.020; *Rice v. Dow*

21  *Chemical Co.*, 124 Wash.2d 205, 210, 875 P.2d 1213, 1216 (Wash. 1994).  Therefore, any

22  differences between New York and Washington statutes of limitation cannot give rise to a

23  conflict of laws analysis under Washington law.

24

1    Since the parties have not identified any true conflict of laws, the Court applies to all of

2    Plaintiffs' claims the presumptive local law, which in this case is Washington law.

3    **B. Standard**

4       1.  12(b)(6) Motion to Dismiss

5       In considering a Rule 12(b)(6) motion to dismiss, the Court must determine whether the

6    plaintiff has alleged sufficient facts to state a claim for relief which is "plausible on its face."

7    *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

8    U.S. 544, 570 (2007)).  A claim is facially plausible if the plaintiff has pled "factual content that

9    allows the court to draw the reasonable inference that the defendant is liable for the misconduct

10   alleged." *Id.* (citing *Twombly,* 550 U.S. 556).  In making this assessment, the Court accepts all

11   facts alleged in the complaint as true, and makes all inferences in the light most favorable to the

12   non-moving party.  *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009)

13   (internal citations omitted).  The Court is not, however, bound to accept the plaintiff's legal

14   conclusions.  *Iqbal*, 129 S. Ct. at 1949-50.  While detailed factual allegations are not necessary,

15   the plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the

16   elements of a cause of action." *Twombly*, 550 U.S. at 555.

17      2.  12(e) Motion for a More Definite Statement

18      A party may move for a more definite statement if the pleading is so vague or ambiguous

19   that the party cannot reasonably prepare a response. Fed.R.Civ.P. 12(e).  Such a motion is

20   appropriate where Plaintiffs have failed to give notice to the defending party of the substance of

21   the claim against them. *Sneller v. City of Bainbridge Island,* 2007 WL 4562882, 2 (W.D.Wash.

22   2007); *Beery v. Hitachi Home Electronics (America), Inc.,* 157 F.R.D. 477, 480 (C.D. Cal.

23   1993).  However, courts generally disfavor motions for a more definite statement, and granting a

24   Rule 12(e) motion is "ordinarily restricted to situations where a pleading suffers from

1  unintelligibility rather than want of detail." *Castillo v. Norton,* 219 F.R.D. 155, 163 (D.Ariz.

2  2003). "[I]f the requirements of the general rule as to pleadings are satisfied and the opposing

3  party is fairly notified of the nature of the claim," a motion for more definite statement should

4  not be granted. *Id.*; *Sheffield v. Orius Corp.,* 211 F.R.D. 411, 414-15 (D.Or.2002); *Tilley v.*

5  *Allstate Ins. Co.,* 40 F.Supp.2d 809, 814 (S.D.W.Va. 1999); *see also Resolution Trust Corp. v.*

6  *Gershman,* 829 F.Supp. 1095, 1103 (E.D.Mo. 1993) ("Rule 12(e) provides a remedy for

7  unintelligible pleadings; it is not intended to correct a claimed lack of detail."). Finally, "[i]f the

8  moving party could obtain the missing detail through discovery, the motion should be denied."

9  *Davison v. Santa Barbara High School District,* 48 F.Supp.2d 1225, 1228 (C.D.Cal.1998);

10  *Castillo,* 219 F.R.D. at 163 ("Rule 12(e) motions are "not to be used to assist in getting facts in

11  preparation for trial as such; other rules relating to discovery, interrogatories and the like exist

12  for such purposes.").

13  **C. Analysis**

14     1. <u>The Releases</u>

15        Defendants seek to dismiss several of Plaintiffs' claims on the basis of Release

16  Agreements entered into by the majority of the Plaintiffs on April 2, 2008. The agreements

17  allegedly release Pro-Fac from liability before that date.[2] Plaintiffs argue that (1) the Release

18  Agreements were entered into without consideration, (2) they were signed under protest, and (3)

19  they are unconscionable. Dkt. # 18, ¶¶ 3.76-77. Plaintiffs also allege that, even if the

20  agreements are enforceable, their claims fall within exceptions included in the Releases,

21  _____

22  [2] The Court may properly consider the release agreements without transforming the Motion to
    Dismiss into a Motion for Summary Judgment because the releases are undisputedly authentic,
    are central to Plaintiffs' claims, and are referenced in Plaintiffs' complaint. *See Janda v. T-Mobil*

23  *USA, Inc.,* 2010 U.S. App. LEXIS 9515 at *2 (9th Cir. May 5, 2010) ("[O]n a motion to dismiss,
    the district court may consider documents that are referenced by the complaint, are central to the

24  plaintiff's claims, and the authenticity of which is undisputed." ).

1  including the exception for claims to Plaintiffs' share of Pro-Fac's gain from the sale of its

2  subsidiary. *Id.* at ¶ 3.78.

3          First, Plaintiffs have failed to allege that the Release Agreements were entered into

4  without consideration because Plaintiffs admit to receiving consideration for signing the releases.

5  *Id.* at 3.75 ("…Plaintiffs needed to sign putative settlement agreements in order to receive any

6  money at all.").   Further, the contracts provide that, "In consideration of the payment under

7  Section 1 as set forth on Exhibit A, the Member hereby releases Pro-Fac…"  Dkt. #36, Exs. 1-23.

8  Plaintiffs do not allege that they did not receive the consideration referenced to in the Release

9  Agreements themselves.   Therefore, the Releases are not invalid for want of consideration.

10         Second, the fact that Plaintiffs claim to have signed the releases under protest does not

11 invalidate the releases.  *See* 1-3 *Corbin on Contracts* § 3.30 (5th ed. 2003) ("An expression of

12 acceptance is not prevented from being exact and unconditional by the fact that it is

13 'grumbling[.]'").  *See also  Ohmer v. Mel Farr Ford, Inc.*, 2001 Ohio App. LEXIS 3551 (Ohio

14 Ct. App. Aug. 13, 2001)  (holding that plaintiff's signature on release with the words "under

15 protest" constituted a valid acceptance of defendant's counteroffer).

16         However, the Court is satisfied that Plaintiffs have pled sufficient facts to make a

17 plausible claim that the release agreements were unconscionable.  Washington recognizes two

18 versions of unconscionability: substantive and procedural.  *Adler v. Fred Lind Manor*, 153

19 Wash.2d 331, 344, 103 P.3d 773, 781 - 782 (Wash. 2004).   Substantive unconscionability exists

20 where the contract is one-sided or overly harsh.  *Id.*  "'Shocking  to the conscience',

21 'monstrously harsh', and 'exceedingly calloused' are terms sometimes used to define substantive

22 unconscionability." *Id.* at 344-45 (internal citations omitted).  Procedural unconscionability is

23 "the lack of a meaningful choice, considering all the circumstances surrounding the transaction

24

1  including the manner in which the contract was entered, whether the party had a reasonable

2  opportunity to understand the terms of the contract, and whether the important terms were hidden

3  in a maze of fine print."  *Id.* at 345 (internal citations omitted).

4        Plaintiffs allege that the releases were unconscionable because Pro-Fac "simply informed

5  … the Plaintiffs [that they] needed to sign putative settlement agreements in order to receive any

6  money at all" and that Pro-Fac failed to "allow the Plaintiffs to participate in the process [of

7  negotiating with Bay Valley]" or to "advise the Plaintiffs of the impact of the settlement."   Dkt.

8  #18, ¶¶ 3.75, 3.77.   Further, Plaintiffs allege to have learned about the cancellation of the Bay

9  Valley contract, which they were relying on to provide a market for their cucumbers for the next

10  two years, at approximately the same time that they learned of the "need" to sign the release to

11  recover any damages from the cancellation.  Dkt. #18.  These facts would likely not support

12  holding a contract unconscionable as between sophisticated parties.  However, making all

13  reasonable inferences in favor of the plaintiffs, and taking into account the unique relationship

14  between the parties, Plaintiffs may have lacked "a meaningful choice, considering all the

15  circumstances surrounding the transaction."  *Adler,* 153 Wash.2d at 345.  Accordingly, the Court

16  declines to dismiss any of Plaintiffs' claims at this stage of the litigation based on the Release

17  Agreements.[3]

18      2.   <u>Breach of Contract – Articles of Incorporation and Bylaws</u>

19        Defendant seeks to dismiss Plaintiffs' claim for breach of Pro-Fac's Articles of

20  Incorporation and Bylaws for failure to state a claim or, in the alternative, requests that

21  Plaintiffs' be ordered to make their claim more definite and certain.   "Generally, a plaintiff in a

22  contract action must prove a valid contract between the parties, breach, and resulting damage."

23

24  [3] Because it is unnecessary, the Court declines to rule on the effect of the exceptions to the
Release Agreements.

1   *Lehrer v. State*, 101 Wash.App. 509, 516, 5 P.3d 722, 727 (2000).  A corporation's governing

2   documents comprise a contract that governs the rights of the parties.  *In re Olympic Nat.*

3   *Agencies, Inc.,* 74 Wash.2d 1, 4, 442 P.2d 246, 248 (Wash. 1968).  Defendant argues that

4   Plaintiffs have failed to allege duties imposed under this contract and have also failed to allege

5   breach of those duties.  Dkt. #36 p. 13.

6          Plaintiffs' complaint contains allegations of at least the following duties owed by Pro-Fac

7   under the Bylaws and Articles of Incorporation:

8          • A duty to distribute its earnings "proportionately and equitably."  Dkt. #18 p. 2

9             (citing Section 7(c) of Pro-Fac's Articles of Incorporation).

10         • A duty to distribute its share of proceeds from the Event to "current and former

11            members … in proportion to their respective aggregate patronage deliveries of

12            crops to [Pro-Fac] during the period commencing on June 30, 2002 and ending on

13            the date of the Event, as determined by the Board of Directors."  *Dkt. #18* ¶ 3.37

14            (citing Article X, Section 4 of Pro-Fac's Bylaws).

15         • A duty to buy back Plaintiffs' common stock upon the negotiation of a permanent

16            reduction in Plaintiffs' deliveries.  Dkt. #18 ¶ 3.45.

17   Plaintiffs complaint further alleges that Pro-Fac breached these duties by not treating members

18   equitably in myriad ways, not distributing its share of proceeds from the Event as required under

19   the Bylaws, allowing some members to accumulate CMV credit after the Event had occurred in

20   violation of the Bylaws, and not buying back all of Plaintiffs' common stock upon the

21   termination of the Guaranteed Contract.

22         Defendant argues that its actions with respect to the distribution of proceeds from the

23   Event are consistent with Article X, Section 4 of the Bylaws.  Therefore, Pro-Fac contends that

24

1    Plaintiffs' complaint should be dismissed because Plaintiffs' complaint demonstrates that

2    "Defendants did <u>not</u> breach the only section of the Bylaws they pled."  Dkt. #36 p. 14.  However,

3    "aggregate patronage deliveries" is not defined in the governing documents and the Court cannot

4    ascertain a plain meaning upon the information now before it.  The Court is satisfied that

5    Plaintiffs have pled "factual content that allows the court to draw the reasonable inference that

6    the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1951.  Accordingly, the

7    Court DENIES Defendant's Motion to Dismiss with respect to Plaintiff's First Cause of Action

8    for Breach of Contract.

9            To the extent that Plaintiffs have not cited specific provisions of the Bylaws and Articles

10   of Incorporation that were breached by Defendants, the Court does not find that such a failure

11   warrants a Court order that the Plaintiffs make their pleadings more definite.  *See Castillo* 219

12   F.R.D. at 163.  (holding that 12(e) motions are "ordinarily restricted to situations where a

13   pleading suffers from unintelligibility rather than want of detail.")  The Court is content that

14   Defendant has been notified as to the nature of the claim asserted against it.  *Id.*   Therefore, it

15   DENIES Defendant's Motion for a More Definite Statement with respect to Plaintiff's First

16   Cause of Action for Breach of Contract.

17        3.   <u>Breach of Contract – Guaranteed Contract</u>

18            "A plaintiff in an action for breach of contract must prove a valid contract exists between

19   the parties."  *See Lehrer*, 101 Wash. App. at 516.  Plaintiffs have failed to state a claim for relief

20   for breach of the Guaranteed Contract because they have failed to allege that the Guaranteed

21   Contracts are valid contracts between Plaintiffs and the Defendant.   First, Plaintiffs are not

22   signatories to the Guaranteed Contract, signed in 2000, nor are they signatories to the

23   amendment of the Guaranteed Contract, signed in 2005.  *See* Dkt. #18 ¶ 3.26; Dkt. # 36, Exs. 24

24

1 & 25.  Second, Plaintiffs cannot support their allegations that they are third party beneficiaries to

2 the Guaranteed Contract.

3   The creation of a third party beneficiary to a contract requires that a promissory *intend* to

4 confer a direct benefit to the third party beneficiary at the time it enters into the contract.

5 *Lonsdale v. Chesterfield*,  99 Wash.2d 353, 361, 662 P.2d 385, 389 - 390 (Wash. 1983).  The

6 "intent" necessary to establish a third party beneficiary is "not a desire or purpose to confer a

7 particular benefit upon" the third party.  *Id.* at 361.  Rather, a court must look to the terms of the

8 contract to establish whether performance under the contract would *necessarily* and directly

9 benefit the purported beneficiary. *Id.* at 362.

10   Plaintiffs allege that "Pro-Fac represented to the Plaintiffs that it entered into the

11 guaranteed contract for [their] specific benefit …"  Dkt. #18. ¶ 3.27.  This allegation, however,

12 refers to a "desire or purpose" to confer a benefit on Plaintiffs.  It does not point to language in

13 the contract that would render a conferral of benefits on the Plaintiffs *necessary* in order to

14 perform the contract.  *See Burke & Thomas, Inc. v. Intl. Org. of Masters*, 92 Wash.2d 762, 767-

15 768, 600 P.2d 1282, 1286 (Wash., 1979) (upholding dismissal of complaint for breach of duty to

16 purported third party beneficiaries to a union contract because "[p]etitioners point to no language

17 in the contract" indicating an intent to create such a duty).

18   Plaintiffs also allege that "under the intent of the parties and according to the

19 representations made by the Pro-Fac and its Board, the Plaintiffs were third-party beneficiaries of

20 the guaranteed contract." Dkt. #18 ¶ 3.29.   This is a legal conclusion that the Court is not bound

21 to accept.  *Iqbal*, 129 S. Ct. at 1949-50.  To survive a motion to dismiss, a plaintiff must provide

22 more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of

23 action." *Twombly*, 550 U.S. at 555.  Since Plaintiffs cannot show that they were parties to the

24

1    Guaranteed Contract, Plaintiffs' claim for breach of the Guaranteed Contract fails. Accordingly,

2    the Court GRANTS Defendant's Motion to Dismiss with respect to Plaintiffs Second Cause of

3    Action for breach of the Guaranteed Contract.

4        4.   Breach of Contract – Release

5        Plaintiffs also fail to state a claim for which relief can be granted on their claim for

6    breach of the Release Agreements.  Here, Plaintiffs allege that "Defendants had an obligation

7    under [the Release Agreements] to not interfere with the Plaintiffs' CMV credit or with the

8    Plaintiffs' right relative to their common stock."  Dkt. # 18 ¶ 6.2.  However, Plaintiffs do not

9    plead any facts to support this allegation other than the fact that "the release specifically states

10   that the Plaintiffs were *not* releasing any rights to their share of Pro-Fac's gains from the Event,

11   including stock redemption."  *Id.* at ¶ 3.78.  Such a statement does not plausibly support an

12   inference that Defendants owed Plaintiffs a continuing contractual duty *under the Release*

13   *Agreements* to refrain from interfering with Plaintiffs' CMV credit or with their rights to their

14   common stock.  The Court GRANTS Defendant's Motion to Dismiss with respect to Plaintiffs'

15   Third Cause of Action for breach of the Release Agreements.

16       5.   Breach of Implied Covenant of Good Faith and Fair Dealing

17       There is in every contract an implied covenant of good faith and fair dealing that

18   obligates the parties to a contract to cooperate.  *Badgett v. Security State Bank,*  116 Wash.2d

19   563, 569-570, 807 P.2d 356, 360 (Wash. 1991).   The "duty arises only in connection with terms

20   agreed to by the parties."  *Id.*  Plaintiffs allege that, "All contracts between the Defendants and

21   the Plaintiffs include an implied covenant of good faith and fair dealing.  Pro-Fac materially

22   breached those covenants through the actions described above, causing the plaintiffs to suffer

23   damages."  Dkt. #18 ¶7.2.  Plaintiffs fail to specify the contracts, the specific terms under the

24   contracts, or which of Defendant's actions allegedly give rise to a breach of covenant of good

faith and fair dealing.  The court cannot recognize "a free-floating duty of good faith unattached to the underlying legal document."  *Badgett,* 116 Wash.2d at 563.  Defendant's Motion to Dismiss is GRANTED with respect to Plaintiffs' Fourth Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing.

6.  <u>Promissory Estoppel</u>

When Plaintiffs learned of Pro-Fac's decision to sell its pickle business, Pro-Fac purportedly "promised the growers that the sale came with significant benefits for the growers." Dkt. #18 ¶ 3.25.  In addition, Pro-Fac "represented to the Plaintiffs that the guaranteed contract would provide the Plaintiffs the means whereby the Plaintiffs would continue to accumulate CMV credit for those ten years." *Id.* at ¶ 3.31.  Both of these promises were made prior to June of 2000. *Id.* at ¶ 3.22.  Finally, when Plaintiffs signed the Release Agreements in 2008, Plaintiffs "reasonably believed that the settlement … would not adversely affect their legal and equitable share of Pro-Fac's gains from the Event" and Pro-Fac "did not suggest otherwise." *Id.* at 3.78-80.  Allegedly, Pro-Fac's duty to perform the promises it  made to Plaintiffs about the accumulation of CMV credit was breached when Plaintiffs learned in December of 2009 that they would not be receiving CMV credit for the years 2008 and 2009.

Under Washington's statute of frauds, a promise is void if not in writing and "by its terms is not to be performed in one year from the making thereof." RCW 19.36.010.  Any promises made to Plaintiffs in 2000 regarding the effect of the Guaranteed Contract are void because they could not be performed until the ten years contemplated in the contract had lapsed.  With respect to alleged promises that were made in 2008, Plaintiffs have failed to plead with specificity regarding what those promises were.  The allegation that Plaintiffs "reasonably believed" that the settlements would not affect their accumulation of CMV credit is short of an allegation that Plaintiffs were affirmatively promised that would be the case.  The allegation that Pro-Fac did

1  not "suggest otherwise," is short of an allegation that Pro-Fac suggested anything at all.  To the

2  extent that Plaintiffs rely on declarations attached to their Opposition to Defendant's Motion to

3  Dismiss to allege affirmative statements made by Pro-Fac representatives, those statements are

4  not properly before the Court on this Motion to Dismiss because Plaintiffs did not refer to the

5  declarations or allege the facts stated therein in their complaint.  *See Ritchie,* 342 F.3d at 908.

6  Defendant's Motion to Dismiss is GRANTED with respect to Plaintiffs' Fifth Cause of Action

7  for Promissory Estoppel.

8      7.  Negligence and Breach of Fiduciary Duty

9          To assert a claim for negligence or breach of fiduciary duty, Plaintiffs must allege that

10  Pro-Fac owed Plaintiffs a duty distinct from the duties owed to them under their contractual

11  agreements.  *See Am. Nursery Prods.,* 115 Wn.2d at 230.  Pro-Fac argues that Plaintiffs'

12  allegations pertain solely to purported duties owed by Pro-Fac to the Plaintiffs under contract.

13  Plaintiffs aver that Pro-Fac owes Plaintiffs additional, non-contractual duties, by virtue of their

14  status as a cooperative corporation.  *See* Dkt. #42 ("Whether those duties are properly designated

15  as 'fiduciary duties' or simply additional 'duties' in general, they are certainly something more

16  than mere contractual obligations.").  *See also* Dkt. #18 ¶¶ 3.3 – 3.4 ("At the core of economic

17  cooperative theory are the following three guiding principles of a cooperative corporation … (3)

18  the vesting in and allocation among the members of all fruits and increases arising from their

19  cooperative endeavor.  This lawsuit arises from the failure of Pro-Fac and its Board to properly

20  comply with the third of these cooperative legal principles.").  To the extent that the duty giving

21  rise to Plaintiffs' claim for negligence is fiduciary in nature, Plaintiffs' negligence claim is

22  duplicative of that for breach of fiduciary duties.  The Court therefore considers both causes of

23  action in conjunction.

24

1    Defendant's argument that Pro-Fac, as a corporation, does not owe a duty to its members

2    does not necessarily defeat Plaintiffs' claims.  Plaintiffs argue that a cooperative corporation

3    assumes duties to its members that a for-profit corporation would not otherwise owe to its

4    shareholders.  At least one court tentatively agrees with Plaintiffs, holding that cooperative

5    corporations may owe something greater to its members than for-profit corporations.  *See*

6    *Peoples Elec. Co-op. v. Western Farmers Elec. Co-op.*,   2010 WL 3895765 at *2 -3  (W.D.

7    Okla. Sep. 29 2010) (rejecting the idea that a cooperative corporation would owe no fiduciary

8    duty to members under any circumstances but holding that no such duty existed where member

9    was a cooperative corporation itself).   It appears that Washington courts have not yet considered

10   the issue.  If the Washington Supreme Court were to consider the issue, it would "weigh

11   considerations of logic, common sense, justice, policy, and precedent."  *Affiliated FM Ins. Co. v.*

12   *LTK Consulting Sers., Inc.*, 2010 WL 4350338 at *3  (Wash. Nov. 4 2010).

13   Assuming without deciding that a cooperative corporation owes a fiduciary duty or other

14   duty of care to its members, the Plaintiffs have pled the necessary elements of a claim for

15   negligence or breach of fiduciary duty.  Pro-Fac's Motion to Dismiss with respect to Plaintiffs'

16   Sixth Cause and Tenth Cause of Action is accordingly DENIED.

17       8.  Negligent Misrepresentation

18   Plaintiffs fail to state a claim for negligent misrepresentation.  Under Washington law,

19   "One who, in the course of his business, profession or employment, or in any other transaction in

20   which he has a pecuniary interest, supplies false information for the guidance of others in their

21   business transactions, is subject to liability for pecuniary loss caused to them by their justifiable

22   reliance upon the information, *if he fails to exercise reasonable care or competence in obtaining*

23   *or communicating the information*."  *Hines v. Data Line Systems, Inc.*, 114 Wash.2d 127, 150,

24

1  787 P.2d 8, 21 (Wash. 1990) (emphasis added).  Plaintiffs have failed to allege that Pro-Fac

2  failed to exercise reasonable care in communicating information to Plaintiffs.

3      Plaintiffs describe two statements that they allege give rise to their claim for negligent

4  misrepresentation: (1) Pro-Fac's representation that Plaintiffs would get 10 years of deliveries to

5  Dean if they did not oppose the sale of Pro-Fac's cucumber facility, and (2) Pro-Fac's claim that

6  signing the release would not diminish or dilute Plaintiffs' share of Pro-Fac's profits.  The first

7  representation cannot give rise to a claim for negligent misrepresentation because Plaintiffs have

8  alleged no facts to support a conclusion that Pro-Fac failed to exercise reasonable care in making

9  such a statement.  Pro-Fac negotiated a contract with Dean that in fact promised ten years worth

10  of cucumber deliveries.  Pro-Fac's inability to foresee that Dean's successor would want to

11  renege on the contract is by no means a failure to exercise care or competence and Plaintiffs have

12  alleged no facts to suggest that Pro-Fac would have known about the request for termination in

13  advance.

14      As to Pro-Fac's statement that the release would not diminish Plaintiffs' share of Pro-Fac

15  profits, Plaintiffs have failed to allege that Pro-Fac even made such a claim.  Plaintiffs'

16  complaint states that Plaintiffs "believed that the settlement … would not adversely affect their

17  legal and equitable share of Pro-Fac's gains from the Event."  Dkt. #18 ¶ 3.79.  However,

18  nowhere in the complaint does it state that Pro-Fac made any representations to justify that

19  belief.  Failing to inform Plaintiffs one way or another does not constitute "false information,"

20  and therefore does not meet the criteria for a claim for negligent misrepresentation under

21  Washington law.  *See Hines,* 114 Wash.2d at 150.  The Court GRANTS Pro-Fac's Motion to

22  Dismiss with respect to Plaintiffs' Seventh Cause of Action for negligent misrepresentation.

23

24

9. <u>Conversion</u>

Plaintiffs fail to state a claim for conversion.  The tort of conversion is "the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it." *Consulting Overseas Management, Ltd. v. Shtikel*, 105 Wn. App. 80, 83, 18 P.3d 1144, 1147 (2001).  Money may become the subject of conversion, but only if the party charged with conversion wrongfully received the money, or if that party had an obligation to return the specific money to the party claiming it. *See Westview Invs., Ltd. V. U.S. Bank,* 133 Wn. App. 195, 202 (1985).  Finally, "there is nothing in the nature of money making it an improper subject of [conversion] so long as it is capable of being identified, as when delivered at one time, by one act and in one mass, or when the deposit is special and the identical money is to be kept for the party making the deposit, or when wrongful possession of such property is obtained." *Id.*

Plaintiffs argue that Defendants converted their property by (1) denying Plaintiffs the ability to receive money from Bay Valley by negotiating a buy-out of the Guaranteed contract, (2) buying Plaintiffs' stock after the buy-out, rather than paying plaintiffs pure contract damages, and (3) failing to give Plaintiffs their proper share of proceeds from the sale of the subsidiary and planned liquidation.  Dkt. #42 p. 23.  These allegations, however, do not amount to a plausible claim that Pro-Fac wrongfully received money from the Plaintiffs or that it had an obligation to "return" it to Plaintiffs.  Plaintiffs do not allege a specific act whereby one mass of Plaintiffs' money was delivered to Pro-Fac that Plaintiffs are now entitled to receive back from Pro-Fac.  Nor do they allege that Plaintiffs, rather than Pro-Fac, own the money and stocks at issue. *Cf. Consulting Overseas Management, Ltd.,* 105 Wn. App. at 86 (holding that a corporation owned disputed funds after signing loan documents, and because it owned them, its shareholders did not commit conversion when they failed to apply them as specified by the loan agreement).  The

1   Court hereby GRANTS Defendant's Motion to Dismiss with respect to Plaintiffs' Eighth Cause

2   of Action for Conversion.

3       10. Tortious Interference

4           Plaintiffs do not address and therefore concede that dismissal is proper as to any claim for

5   tortious interference with contracts.  With respect to tortious interference with business

6   expectancies, Plaintiffs allege that Pro-Fac interfered with Plaintiffs' business expectancy with

7   Bay Valley by working with Bay Valley without Plaintiffs' knowledge to buy out the Guaranteed

8   Contract.  Dkt. #18 ¶ 3.63.  In a tortious interference claim, a claimant is required to show a

9   "relationship between parties contemplating a contract, with at least a reasonable expectancy of

10  fruition." *Scymanski v. Dufault*, 80 Wash.2d 77, 84-85, 491 P.2d 1050 (1971).  Plaintiffs were

11  not parties to the Guaranteed Contract.  *See* § III (C)(3), *supra*.  Plaintiffs do not allege that they

12  were contemplating a separate contract with Bay Valley.  Therefore, Plaintiffs have failed to

13  plead the elements of a tortious interference claim.   Defendant's Motion to Dismiss with respect

14  to Plaintiffs' Ninth Cause of Action for tortious interference is GRANTED.

15      11. Declaratory Judgment/Injunction

16          Plaintiffs do not address and therefore concede that dismissal is proper as to their

17  Eleventh Cause of Action for Injunctive Relief.  *See* Dkt. #36 23-24.  Defendant has not moved

18  to dismiss Plaintiffs' claim for declaratory relief pursuant to RCW 7.24.030.  *Id.*  The Court

19  hereby GRANTS in part and DENIES in part Defendant's Motion to Dismiss with respect to

20  Plaintiffs' Eleventh Cause of Action.  Plaintiffs have failed state a claim for injunctive relief

21  upon which relief can be granted.  Plaintiffs claim for declaratory relief may go forward.

22

23

24

1

## IV. CONCLUSION

2       Having reviewed the relevant pleadings, the declarations and exhibits attached thereto,

3 and the remainder of the record, the Court hereby finds and ORDERS:

4     (1)  Defendant's Motions to Dismiss (Dkt. #36) is GRANTED in part and DENIED in

5         part, as set out above.

6     (2)  The Clerk is directed to forward a copy of this Order to plaintiffs and to all counsel

7         of record.

8

9

10

11

12

      Dated December 14, 2010.

13

14

15

16

                              RICARDO S. MARTINEZ

17                            UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24