UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HAYTON FARMS, INC., et al., <br><br> Plaintiff, <br><br> v. <br><br> PRO-FAC COOPERATIVE, INC., a New York cooperative corporation, <br><br> Defendant. | CASE NO. C10-520-RSM <br><br> ORDER GRANTING DEFENDANT'S 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS |

# I. INTRODUCTION

This matter comes before the Court upon Defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Dkt. #95. For the reasons set forth below, Defendant's motion is GRANTED.

# II. BACKGROUND

Plaintiffs are cucumber farmers and former members of Defendant, Pro-Fac Cooperative, Inc. ("Pro-Fac"), a cooperative corporation organized under the laws of New York. Plaintiffs originally filed suit against Pro-Fac and its directors, alleging claims for breach of contract;

breach of covenant of good faith and fair dealing; promissory estoppel; negligent performance; negligent misrepresentation; conversion; tortious interference; breach of fiduciary duties; and declaratory/injunctive relief. Dkt. #18. The parties stipulated to dismissal of all of the directors for lack of personal jurisdiction (Dkt. #66), and the court dismissed several of Plaintiffs' claims in its order on Defendant's motion to dismiss (Dkt. #74). The Court also denied Defendant's motion for change of venue. Dkt. #73. Remaining are claims for breach of contract, negligence and breach of fiduciary duty against Defendant Pro-Fac.

Pro-Fac intends to liquidate at the end of 2012 and proceeds from the liquidation will be distributed to current and former members of Pro-Fac based on CMV credit. CMV credit is "the weighted average price paid by commercial processors for the same or similar crops, used for the same or similar purposes, in the same or similar marketing areas." Dkt. # 18, ¶3.9. Pro-Fac members earned CMV credit in proportion to the amount of deliveries they made to the cooperative. Plaintiffs allege that the proceeds from the liquidation are going to be distributed inequitably for a variety of reasons including Pro-Fac's dealings with other members, who are also members of the Board of Directors. *Id.* at ¶¶ 3.114-124. Plaintiffs allege damages resulting from Pro-Fac's actions in the form of diminished assets and lost profits.

The Court has summarized the remaining facts of this lawsuit in detail elsewhere. *See* Dkt. #s 73 & 74. Relevant to this motion are allegations surrounding a series of decisions made by Pro-Fac after 2007 that allegedly impacted Plaintiffs' share in the proceeds from the sale of Pro-Fac's assets and eventual dissolution, yet are unrelated to the Plaintiffs' cucumber operations (the "non-cucumber claims").

First, Plaintiffs point to the sale by Pro-Fac's subsidiary, Birds Eye Foods, Inc.[1] (the "Subsidiary") of essentially all of its operating assets for its non-branded frozen vegetable business to Allen Canning Company (now Allens, Inc.). The Court will refer to this transaction as the "Allens Canning transaction". Several of Pro-Fac's board members are vegetable growers on the East Coast and these growers were impacted by the Allens Canning transaction. Dkt. #18, ¶3.86. Plaintiffs allege that, as part of the sale, Allens assumed the contractual duty of the Subsidiary to buy vegetables from Pro-Fac. Dkt. #18, ¶ 3.84. However, Allens wanted to buy the vegetables directly from the grower/board members. *Id.* at 3.87. Since such an arrangement would negate the grower/board members' ability to accumulate CMV credit (since the deliveries would be going to Allens, and not Pro-Fac), the grower/board members opposed the deal. Instead, "to assure themselves more CMV credit, these board members/growers created a scheme to make it appear they were continuing to deliver their vegetables to Allens through Pro-Fac," by forming an entity called Farm Fresh First, LLC, ("Farm Fresh"). *Id.* at ¶¶ 3.89-90. Farm Fresh served as Pro-Fac's exclusive sales agent for sales of agricultural products grown by Pro-Fac members in New York state and enabled those grower/board members to continue to accumulate CMV credit following the Allens Canning transaction. *Id.* ¶¶ 3.91 & 3.93. Plaintiffs allege that they were not offered a similar opportunity to continue to accumulate CMV credit when Pro-Fac terminated its contract with pickle-processor Bay Valley Foods before the 2008 growing season and thereby ceased accepting deliveries of cucumbers from Plaintiffs. As a result, the Allens Canning transaction was allegedly inequitable, improper, diminished Plaintiffs' share in capital

---

[1] The Subsidiary was originally Curtice-Burns Foods, Inc., which was renamed Agri Link Foods, Inc., and eventually renamed Birds Eye Foods, Inc.

gains accruing from the sale of the Subsidiary and dissolution of Pro-Fac, and interfered with Plaintiffs' interests. *Id.* at ¶3.98.

Second, Plaintiffs also allege that since the Subsidiary was refinanced in 2007, "Pro-Fac has been operating as essentially a holding company" and that members delivering through Pro-Fac after 2007 should not receive CMV credit for those deliveries. *Id.* at ¶¶3.99 – 3.101. By allowing some members to continue to accumulate CMV credit, but denying "similar deals" to Plaintiffs, Plaintiffs suffered further diminution in the value of their share of the eventual sale of the Subsidiary and dissolution of Pro-Fac and further interference with their interests. *Id.* at ¶¶3.102-3.103.

Third, certain members "including interested board members" were allowed to continue to accumulate CMV credit for deliveries that happened after the sale of the Subsidiary in 2009. *Id.* at ¶ 104. This too was a deal not offered to Plaintiffs, caused their share in the proceeds of the sale to decrease in value, and constituted an interference with their interests. *Id.* at ¶3.105-106.

Fourth, Plaintiffs allege that Pro-Fac has retained approximately $11 million from the sale of the Subsidiary that should have been distributed to members. *Id.* at ¶3.112.

Finally, after the sale of the Subsidiary, Pro-Fac purchased back most of the common stock (and delivery rights) of most members, yet set the liquidation date for two years in the future. During this period, certain growers (including board members) were permitted to continue to deliver crops to Pro-Fac and continue to accumulate CMV credit. These actions diminished Plaintiffs' legal and equitable shares of the liquidation proceeds. *Id.* at ¶¶ 3.121-3.123.

Defendants move to dismiss each of these claims as improperly pled shareholder derivative claims or, in the alternative, as claims that should be brought against Pro-Fac's directors. Because the Court resolves the issue on other grounds, it does not reach the question of whether Plaintiffs must plead these claims as shareholder derivative claims.

## III. ANALYSIS

### A. Standard of Review

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). The standard governing a Rule 12(c) motion for judgment on the pleadings is essentially the same as that governing a Rule 12(b)(6) motion. *Dworkin v. Hustler Magazine Inc.,* 867 F.2d 1188, 1192 (9th Cir.1989) ("The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog."); Sandberg v. Van Boening 2010 WL 4983594, 1 (W.D.Wash.) (W.D.Wash.,2010). Thus, a motion for a judgment on the pleadings "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. County of Los Angeles,* 179 F.3d 698, 699 (9th Cir.1999).

### B. Choice of Law

A federal district court sitting in diversity applies "the forum state's choice of law rules to determine controlling substantive law." *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir.2002). Therefore, Washington choice of law rules apply. In Washington, "there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state before Washington courts will engage in a conflict of laws analysis." *Erwin v. Cotter Health*

*Centers,* 161 Wash.2d 676, 692, 167 P.3d 1112 (2007) (citing *Seizer v. Sessions,* 132 Wash.2d 642, 648, 940 P.2d 261 (1997)). Where there is no conflict, presumptive local law is applied. *Seizer,* 132 Wash.2d at 648-49. Defendants contend, Plaintiffs do not dispute, and the Court confirms that there is no conflict between Washington and New York law with respect to the characterization of the action. Accordingly, the court applies Washington law.

## C. Characterization of the Action

Defendant argues that "Plaintiffs allege wrongdoing by the Board to the detriment of the corporation… The claims are actually shareholder derivative claims but are not sufficiently pled as such." Dkt. #95, p. 6. Fed. R. Civ. P. 23.1 applies where "one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to endorse a right that the corporation or association may properly assert but has failed to enforce." To bring a shareholder derivative action, the complaint must (1) "allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;" (2) "allege that the action is not a collusive one to confer jurisdiction the court would otherwise lack;" and (3) "state with particularity… any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members… and the reasons for not obtaining the action or not making the effort." *Id. See also Kona Enterprises, Inc. v. Estate of Bishop*, 179 F.3d 767, 769 (9th Cir. 1999) ("Rule 23.1's continuous share ownership requirement is procedural in nature and thus applicable in diversity actions."). Thus, Defendant seeks dismissal on the basis that Plaintiffs' claims with respect to the non-cucumber claims are derivative and, as such, do not satisfy the pleading requirements set forth above.

"Ordinarily, a shareholder cannot sue for wrongs done to a corporation, because the corporation is a separate entity: the shareholder's interest is viewed as too removed to meet the

standing requirements." *Sabey v. Howard Johnson & Co.*, 101 Wash.App. 575, 584 (2000). Nonetheless, a shareholder can cure this standing problem by suing derivatively, on behalf of the corporation. *Id.* "In a derivative suit, a stockholder asserts rights or remedies belonging to the corporation for the corporation's benefit." *Haberman v. Washington Public Power Supply System*, 109 Wash.2d 107, 147-148, (1987), citing 12B W. Fletcher, *Private Corporations* § 5907 (1984). Such an action is equitable in nature, providing a shareholder with standing to enforce a corporate right, which the corporation itself is unable, or unwilling, to enforce on its own behalf. *Id.*

Washington has adopted the majority rule for determining whether an action may be brought individually or must be brought derivatively on behalf of all shareholders:

> The action is derivative, that is, in the corporate right, *if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders*, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets. . . If damages to a stockholder result indirectly, as the result of an injury to the corporation, and not directly, he cannot sue as an individual.

12B Fletcher, *Cyclopedia of Corporations,* s 5911, p. 421 (perm. ed.)(footnotes omitted) (emphasis added). *See also Hunter v. Knight, Vale & Gregory,* 18 Wash.App. 640, 646, 571 P.2d 212 (1977); *Interlake Porsche & Audi, Inc. v. Bucholz*, 45 Wash App 502, 728 P2d 597; *LaHue v. Keystone Co., Inc.*, 6 Wash App 765, 496 P2d 343; *Turner v. Officers, Directors and Employees of Mid Valley Bank*, 712 F.Supp. 1489, 1495 (E.D.Wash. 1988). An exception to the rule that an individual may not sue for injuries suffered by a corporation is where "the injury to the individual resulted from the violation of some special duty owed to the stockholder . . . [and] that special duty had its origin in circumstances independent of the stockholder's status as a stockholder." *Hunter v. Knight, Vale and Gregory*, 18 Wash.App. 640, 646 (1977).

Waste and mismanagement of corporate assets, issuing stock for inadequate consideration, and depreciation in the value of the stock are all examples of derivative claims because they affect the entire corporation, not just a few shareholders. *See* Fletcher, *infra,* at §§ 5913, 5923. Here, Plaintiffs allege that "Pro-Fac received no benefit from [the] arrangement" with Allens; that "Defendants had been improperly giving CMV credit to other growers"; and that "the Defendants had been diminishing the Plaintiffs' pro rata shares for several years." Dkt. #18, ¶3.93; 3.111. These types of claims cannot be brought individually because the injuries alleged flow directly from Plaintiffs' status as members, constituting injuries to the cooperative as a whole. Any other conclusion "would admit of as many suits against the wrongdoer as there were stockholders in the corporation." Fletcher, *supra,* at § 5911. Indeed, Plaintiffs acknowledge that "upon entry of a judgment from this Court for monies due to Plaintiffs, Pro-Fac would likely need to re-allocate CMV credits and adjust distribution amounts to other members and former members of the cooperative." Dkt. # 102, p. 8. Accordingly, Plaintiffs claims should be plead as derivative claims.

Nor do Plaintiffs qualify under one of the exceptions to the rule that an individual cannot bring an action to remedy an injury borne by the corporation. Plaintiffs cite *Sax v. World Wide Press Inc.,* 809 F.2d 610, 614 (9th Cir. 1986) for the proposition that "[a] direct action can be brought either when there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder." Plaintiffs claim that "Defendant owed Plaintiffs special duties arising from both the Bylaws and Articles, which made up the very contractual obligations between it and the Plaintiffs, and by its very nature as a cooperative." These special duties, however, do not have their "origin in circumstances independent of the stockholder's status as a stockholder." *Hunter v. Knight, Vale and Gregory*, 18 Wash.App. 640, 646 (1977). These duties arise out of

Plaintiffs' status as members of the cooperative; any special duties owed to Plaintiffs under the Articles and Bylaws, and by virtue of the fact that the entity is a cooperative, are duties that Defendant owes to *every* member of the cooperative. Therefore, with respect to the characterization of the action, Plaintiffs' status is indistinguishable from that of an ordinary stockholder in a corporation. *See McCarthy v. Middle Tennessee Elec. Membership Corp.*, 466 F.3d 399, 408 -410 (6th Cir. 2006) (upholding district court's characterization of an action as derivative in nature where members of a cooperative alleged the cooperative's directors engaged in mismanagement, self-dealing, and breach of fiduciary duty).

Finally, Plaintiffs argue that Defendant's motion should be denied because they do not have standing to bring a derivative lawsuit. The Ninth Circuit has interpreted Rule 23.1 to require that a plaintiff retain ownership of the stock for the duration of a derivative lawsuit. *See Quinn v. Anvil Corp.,* 620 F.3d 1005, 1012 (9th Cir. 2010). *Id.* Since Plaintiffs are no longer members of the cooperative, they no longer retain ownership in the stock and therefore contend they lack standing to plead their claims derivatively on behalf of the corporation. The Court notes that there are exceptions to the continuous ownership requirement that were not briefed in Plaintiff's opposition that may or may not be applicable here. *See, e.g., Lewis v. Chiles*, 719 F.2d 1044, 1048 (9th Cir.1983) (citing state court decisions recognizing equitable standing "when officers or directors breached their fiduciary duty in connection with" a corporate merger that resulted in "*dissolution* of a corporation.") (emphasis added). However, the Court need not reach the issue of whether Plaintiffs have standing to bring a derivative lawsuit. Plaintiffs' *lack* of standing to bring a derivative lawsuit does not remedy their lack of standing to bring an individual lawsuit. The Court agrees with Defendant that Plaintiffs' claims involving actions taken by Pro-Fac that are unrelated to Plaintiffs' cucumber operations are properly characterized

as derivative claims. Accordingly, Plaintiffs must comply with Rule 23.1, which require that Plaintiffs state with particularity any efforts to obtain the desired action from the directors of the cooperative and reasons for not obtaining the action or not making the effort. Plaintiffs have not done so. In addition, there may be a question of standing, as discussed *supra*. Finally, a plaintiff cannot bring a derivative claim against the entity of which the plaintiff is a member. After all, the plaintiff is suing on behalf of the corporation and accordingly cannot sue itself. *See Hyman v. New York Stock Exchange, Inc.*, 46 A.D.3d 335, 337 (N.Y. App. 2007) ("[T]o recognize a fiduciary relationship between the corporation and its shareholders would lead to the confounding possibility that a shareholder of a corporation could bring a derivative action on behalf of the corporation against the corporation itself."). Plaintiffs dismissed the directors from this lawsuit. Dkt. # 66. Accordingly, Plaintiffs non-cucumber claims must be dismissed as a matter of law.

**D. Moot Claims**

Plaintiffs allege that Pro-Fac improperly counted "stored deliveries" made by East Coast growers after December, 2009 in calculating CMV credit, thereby diluting the value of Plaintiffs' share in the proceeds of the dissolution. Dkt. # 18, ¶¶ 3.104 – 106, 3.111, 3.121 – 3.123. After this action was filed, Pro-Fac's Board representatives presented the issue of Pro-Fac's interpretation of the Bylaws to the Supreme Court of the State of New York for Monroe County. The New York court ruled that stored deliveries "should not be counted as deliveries under the Bylaws for the purposes of calculating the disbursement of any capital gain" and that the business judgment rule did not apply to support an alternative interpretation. Dkt. # 95, App. A, p. 15. The New York court has therefore decided the issue of whether stored deliveries may be counted and it has determined that counting the stored deliveries would constitute breach of contract. The issue of whether such deliveries may be counted for the purposes of allocating

CMV credit is therefore moot. *See Aiona v. Judiciary of Hawaii,* 17 F.3d 1244, 1248 (9th Cir. 1994) (holding that plaintiff's federal claims against the state for improperly revoking their driver's licenses were moot because plaintiffs had already received a declaration in state court that their revocations were improper). To be clear, all claims that do not involve the Plaintiffs' cucumber operations have been dismissed as improperly pled. The claims related to improperly counting stored deliveries for purposes of CMV credit are hereby dismissed for the additional reason that they are moot.

## IV. CONCLUSION

Having reviewed Defendant's motion, the response and reply thereto, the attached declarations and exhibits, and the remainder of the record, the Court hereby ORDERS:

(1) Plaintiffs' claims related to actions taken by Defendant that do not involve the Plaintiffs' cucumber operations, specifically ¶¶ 3.49 through 3.58, 3.81 through 3.106, 3.111 through 3.113, 3.117 through 3.127, 3.132 through 3.133, and 3.135 through 3.136 of Plaintiff's First Amended Complaint (Dkt. # 18), are hereby DISMISSED.

(2) Plaintiffs' claims with respect to improperly counting stored deliveries for the purpose of calculating CMV credit are DISMISSED as MOOT.

The Clerk is directed to forward a copy of this order to all counsel of record.

Dated this 18 day of July 2011.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE