UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HAYTON FARMS, INC., et al., | CASE NO. C10-520-RSM |
| Plaintiffs, | ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| PRO-FAC COOPERATIVE, INC., a New York corporation licensed to do business in Washington, | |
| Defendant. | |

## I. INTRODUCTION

This matter comes before the Court upon Plaintiff's Motion for Partial Summary Judgment (Dkt. # 89).  For the reasons set forth below, Plaintiff's motion is DENIED.

## II. DISCUSSION

### A.  Background

Plaintiffs are twenty-six (26) cucumber growers located in Washington and Oregon and are current or former members and shareholders of Defendant Pro-Fac Cooperative, Inc. ("Pro-Fac").  Defendant Pro-Fac is a cooperative corporation formed in 1960 under the Cooperative Corporations Law of New York to market the agricultural products of its members.  Plaintiffs

1  remaining claims include claims for breach of contract, negligence, and breach of fiduciary duty.

2  Dkt. #74.  At base, Plaintiffs contend that Pro-Fac was obligated to distribute its earnings

3  proportionately and equitably and failed to do so. Dkt. #18 at 2.

4       Pro-Fac's subsidiary owned a pickle business in Tacoma, Washington to which Plaintiffs

5  had previously supplied cucumbers.  When the business was sold to Dean Pickle and Specialty

6  Products Company ("Dean") in June of 2000, Pro-Fac entered into a Raw Product Supply

7  Agreement with Dean to supply raw cucumbers.  Dkt. # 107, Ex. B.  In 2005, Pro-Fac entered

8  into another Raw Product Supply Agreement with Dean.  Dean Pickle was later succeeded by

9  Bay Valley as the cucumber customer.  Plaintiffs were not parties to either the 2000 or 2005 Raw

10  Product Supply Agreement.  Dkt. # 107, Ex. A.

11       Before the 2008 crop season, Bay Valley announced it would close its pickle plant.  Dkt.

12  # 107, Ex. C.  As a result, it terminated the 2005 Raw Product Supply Agreement two years

13  early.  Pro-Fac negotiated a settlement of $1,380,625 with Bay Valley for the termination of the

14  contract.  Pro-Fac's Board of Directors decided to use some the money received from the

15  settlement with Bay Valley to buy a portion of Plaintiffs' shares in Pro-Fac.  The remainder of

16  the money, minus a $35,000 administration fee, was distributed to cucumber farmers in

17  proportion to each farmer's tonnage reduction.    In order to receive a share of the settlement

18  from the cancellation of the contract, Plaintiffs were asked to sign a release (the "Release").

19  Under the terms of the Release, Plaintiffs agreed to the following:

20       In consideration of the payment under Section 1 as set forth on Exhibit A, the
        Member hereby releases Pro-Fac, its directors, officers, employees, successors
21       and assigns from any and all liability to the Member and the Member's successors
        and assigns, for any and all claims whatsoever arising from facts and
22       circumstances occurring prior to the date of this Release Agreement, including by
        way of example and not limitation, any obligation to procure from the member all
23       or any part of the volume of cucumbers to be procured under the Agreement…

24  Dkt. #36 Exs. 1-24.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

1    Defendants have asserted as an affirmative defense that Plaintiffs' claims are barred by

2    the Release.  Plaintiffs argue that no consideration was given for the Release because the

3    payment made to Plaintiffs in return for their promise not to sue was money Pro-Fac was already

4    obligated to pay under the New York law, federal IRS law, the Articles of Incorporation,

5    Bylaws, and the General Marketing Agreement.   Dkt. #89.  At base, Plaintiffs' argument is that

6    "the money received from the Bay Valley termination was legally and contractually owed to the

7    cucumber members *all along*."  Dkt. #96, p. 5.  Plaintiffs seek partial summary judgment

8    dismissing Defendant's affirmative defense that Plaintiffs' claims are barred in part by the

9    Release on the basis that the Release Agreements are invalid for want of consideration.

10   **B.  Standard**

11   Summary judgment is appropriate where "the movant shows that there is no genuine

12   issue as to any material fact and that the movant is entitled to judgment as a matter of law."

13   FRCP 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).   In ruling on summary

14   judgment, a court does not weigh evidence to determine the truth of the matter, but "only

15   determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549

16   (9th Cir. 1994) (*citing O'Melveny & Meyers*, 969 F.2d at 747).   Material facts are those which

17   might affect the outcome of the suit under governing law.  *Anderson,* 477 U.S. at 248.  The Court

18   must draw all reasonable inferences in favor of the non-moving party.  *See F.D.I.C. v.*

19   *O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), rev'd on other grounds, 512 U.S. 79

20   (1994).  However, the nonmoving party must make a "sufficient showing on an essential element

21   of her case with respect to which she has the burden of proof" to survive summary judgment.

22   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

23

24

1  **C. Discussion**

2      A release is a contract in which one party agrees to abandon or relinquish a claim,

3  obligation, or cause of action against another party.  *Boyce v. West,* 71 Wn.App. 657, 662 (1993).

4  "[I]ts construction is governed by contract principles subject to judicial interpretation in light of

5  the language used."  *Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wash.2d 178, 187 (1992)

6  (citing *Vanderpool v. Grange Ins., Ass'n*, 110 Wash.2d 483 (1988)).  "It is black letter law of

7  contracts that the parties to a contract shall be bound by its terms."  *Adler v. Fred Lind Manor*,

8  153 Wash.2d 331, 344 (2004) (citing *Nat'l Bank of Wash. v. Equity Investors, L.P.,* 81 Wash.2d

9  886, 912–13 (1973).  Further, "[i]n deciding the voidability of releases, two competing policies

10  are considered. The law favors just compensation ... However, the law also favors private

11  settlement of disputes. Releases are therefore given great weight to support the finality of those

12  settlements."  *Watson,* 120 Wash.2d at 187 (internal citations omitted).  The Washington

13  Supreme Court has "generally upheld the validity of releases." *Id.*

14      Here, Plaintiffs contend that the Releases signed in early 2008 were not supported by

15  consideration because "Pro-Fac was already obligated by its pre-existing corporate documents –

16  the General Marketing Agreement, Articles of Incorporation, and Bylaws – and the tax laws to

17  pay Plaintiffs the money it had received from Bay Valley in lieu of Plaintiff's cucumber

18  deliveries."  Dkt. # 89, p. 12 (emphasis in original).  "Whether a contract is supported by

19  consideration is a question of law and may be properly determined by a court on summary

20  judgment."  *Watson*, 120 Wash.2d at 195.  Relevant to the instant motion is the so-called pre-

21  existing duty rule, which requires "[i]ndependent, additional, consideration …for the valid

22  formation of a modification or subsequent agreement." *Labriola v. Pollard Group, Inc.*, 152

23  Wash.2d 828, 834 (2004).  "There is no consideration when one party is to perform some

24

1  additional obligation while the other party is simply to perform that which he promised in the

2  original contract." *Id.*

3      The relevant contracts to this motion are (1) the 2005 Raw Product Supply Agreement

4  between Pro-Fac, Birds Eye Foods, Inc., and Dean (later succeeded by Bay Valley); (2) the

5  General Marketing Agreement between Pro-Fac and Pro-Fac members; (3) the annual crop

6  agreements executed by Pro-Fac, Pro-Fac members, and Dean/Bay Valley; (4) Pro-Fac's Articles

7  of Incorporation, and (5) Pro-Fac's Bylaws.  As an initial matter, Plaintiffs do not point to any

8  language in any of these contracts providing that Pro-Fac will pay Plaintiffs any settlement

9  proceeds it receives from Bay Valley or any other entity.  Further, the Court has read each of

10  these contracts[1] and has found no language in any of the agreements in which Pro-Fac makes

11  such a promise.

12      Plaintiffs' argument regarding Pro-Fac's existing duty, however, is more nuanced.

13  Plaintiffs argue that "(1) Pro-Fac would not have been able to fulfill its 10-year cucumber

14  commitment to its customer without Plaintiffs, (2) consequently, Pro-Fac committed to purchase

15  the required amount of cucumbers from Plaintiffs for 10 years, and (3) Pro-Fac was obligated to

16  pay Plaintiffs from the funds that it received from its customer over that 10-year period."  Dkt. #

17  108, pp. 3-4.  An arrangement whereby Pro-Fac agreed to pass on to Plaintiffs any funds it

18  received from its customer over the 10-year term of the contract might have been a reasonable

19  and fair agreement under the circumstances.  However, this is not what the parties agreed to, and

20  the Court is not at liberty to re-write the contracts to make it so.  Rather the parties agreed that

21

22

23  _____

24  [1] In the case of the annual supplements to the General Marketing Agreement, the Court has read
representative samples of such agreements.  *See* Dkt. # 107, Ex. E; Dkt. # 109, Ex.B.

1  Pro-Fac would pay Plaintiffs for all "deliveries" of cucumbers.  The General Marketing

2  Agreement provides:

> 3  Pro-Fac [a]grees … [t]o advance Member in cash within 30 days following
> *completion of delivery* of each of his products as accepted, graded and classified,
> 4  one-half of the estimated Commercial Market Value of such products.  A second
> payment of 25% of the estimated or actual Commercial Market Value will be paid
> 5  no later than four months following the average date of *completion of delivery* of
> each product by all members.  A final payment of any Commercial Market Value
> 6  due in addition to the first two payments will be made as soon as practical after
> the close of the fiscal  year of Pro-Fac but not later than July 15 of the following
> 7  year.

8  Dkt. # 107, Ex. D.  Similarly, the annual crop agreement for 2007 between individual Plaintiffs,

9  Pro-Fac, and Bay Valley entitled the "2007 Pro-Fac Hand-Harvest Cucumber Agreement –

10  Washington" provides:

> 11  BAY VALLEY will make the payment required by paying 75% of the CMV
> directly to member within 15 days from *delivery of the raw product* at the
> 12  receiving station and BAY VALLEY will pay the remaining 25% of all CMV to
> PRO-FAC.  PRO-FAC will make the final payment to MEMBER pursuant to
> 13  paragraph 4… PRO-FAC AGREES … [t]o pay MEMBER a final payment of
> 25% of the commercial market value as soon as practical after the close of the
> 14  fiscal year.

15  Dkt. # 107, Ex. E; Dkt. # 109, Ex. B.  Plaintiffs admittedly did not deliver cucumbers in 2008 or

16  2009.  Therefore, Pro-Fac was not obligated, under either contract, to pay Plaintiffs for crops

17  they did not deliver during those years.  In any case, no annual crop agreements were executed

18  by Pro-Fac cucumber farmers for years 2008 and 2009.  Dkt. # 107 ¶ 12.

19      Plaintiffs cite the IRS tax code for the proposition that, as a cooperative entity, Pro-Fac

20  had a pre-existing legal obligation to distribute its net margins in the form of patronage

21  dividends.  *See* Dkt. # 89, p. 8 (citing Supchapter T of the Internal Revenue Code (IRC Sections

22  1381-1388)).  However, if Pro-Fac were to distribute the settlement from Bay Valley as a

23  patronage dividend, Plaintiffs would receive far less than the amount actually received under the

24  Release agreements, as Plaintiffs would be required to share the proceeds with all other members

1   of the cooperative.  See Dkt. # 107, Ex. G (Pro-Fac's Bylaws, providing that patronage proceeds

2   be distributed to all members – not just cucumber farmers – based upon each member's pro-rata

3   share, determined by that member's annual deliveries.).  Therefore, to the extent that Pro-Fac had

4   a pre-existing obligation to provide Plaintiffs with some portion of the settlement, that portion

5   was far less than Plaintiffs actually received when it was distributed among cucumber farmers to

6   the exclusion of other members.  In any case, Plaintiffs concede that the settlement should not

7   have been distributed in the form of patronage dividends.  *See* Dkt. # 108, p. 8 ("[T]he $998,400

8   was not a part of *nor ever intended to be* a part of the remaining net proceeds in Pro-Fac's 'single

9   marketing pool' and thus not allocable to all its members pro-rata based on their respective

10  CMV.") (emphasis in original).  Any pre-existing duty arising under the Bylaws and/or the

11  Internal Revenue Code to distribute net proceeds in the form of patronage dividends is inapposite

12  to the question of whether Pro-Fac had a pre-existing duty to distribute the settlement it received

13  from Bay Valley among cucumber farmers.

14          Plaintiffs' final theory is that Pro-Fac had a pre-existing duty to pay Plaintiffs the value

15  of the settlement it received from Bay Valley under the terms of the 2005 Raw Product Supply

16  Agreement.  The 2005 Raw Product Supply Agreement is a contract between Pro-Fac

17  Cooperative, Inc., Birds Eye Foods, Inc. (Pro-Fac's successor), and Dean Pickle and Specialty

18  Products Company (later, Bay Valley).  Dkt. # 107, Ex. A.  Plaintiffs are not a party to the

19  contract.  Thus, there is no contractual duty owed to Plaintiffs by Pro-Fac under that contract.

20  Even if Plaintiffs were a party to the contract, there is no language in the Raw Product Supply

21

22

23

24

1    Agreement that requires Pro-Fac to pay Plaintiffs any settlement received from Dean/Bay

2    Valley.[2]

3         Plaintiffs argue that they are third party beneficiaries to the Raw Product Supply

4    Agreement.  The Court previously ruled that, as pled in their second amended complaint,

5    Plaintiffs are not third party beneficiaries to the Raw Product Supply Agreement.  Dkt. # 74, p.

6    13.  Even if Plaintiffs were third-party beneficiaries to the Raw Product Supply Agreement,

7    Plaintiffs do not point to any authority from Washington or any other jurisdiction providing that,

8    as third party beneficiaries, Plaintiffs would have been legally entitled to receive the whole of

9    any settlement negotiated between Bay Valley and Pro-Fac such that any contract to release Pro-

10   Fac from liability that was predicated on the delivery of that settlement would fail for lack of

11   consideration.

12        Finally, even if Plaintiffs could show that Pro-Fac owed a pre-existing duty to pass

13   through any money received from Bay Valley to Plaintiffs, "[t]he rules with respect to the

14   settlement of disputed claims seem clearly to be exceptions to the rule that performance of a pre-

15   existing duty is not consideration."  2-7 Joseph Perillo, *Corbin on Contracts* § 7.17 (5th ed. West

16   _____

17   [2] Notably, there *is* language requiring a pass-through going the other direction: Pro-Fac is
     required to pay Dean/Bay Valley liquidated damages resulting from product shortfalls caused by

18   intentional and collective acts of Pro-Fac growers, i.e. Plaintiffs ("Grower Shortfalls").  *See* Dkt.
     # 107, Ex. A, p. 11 ("Pro-Fac shall enforce Pro-Fac's right against the Pro-Fac Growers in the

19   States of Washington and Oregon who cause such Grower Shortfall to collect liquidated
     damages in the amount of twenty-five percent (25%) of the CMV of such Grower Shortfall and

20   shall promptly pay to Dean the amount of twenty-five percent (25%) of the CMV of such
     Grower Shortfall regardless of whether or not Pro-Fac collects such amounts from Pro-Fac

21   Growers.").  Indeed, Pro-Fac's liability is greater than that of the Plaintiffs, as it is required to
     pay liquidated damages to Dean regardless of whether Plaintiffs pay those damages to Pro-Fac.

22   This language is telling insofar that no similarly unambiguous language exists in any contract
     with respect to a pass-through from Bay Valley to Plaintiffs.  Further, the fact that Pro-Fac's

23   liability is greater than that of Plaintiffs under the Raw Product Supply Agreement supports an
     inference that it was the intention of the parties that Pro-Fac would have been entitled to retain at

24   least some portion of the settlement agreement upon termination.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 8

1    2003).  "Even granting that there is a legal duty to make immediate compensation for a wrongful

2    injury, the uncertainties that are involved make it sound policy to give validity to agreements of

3    compromise or agreements that reduce the amount to certainty."  *Id.  See also Watson,* 120

4    Wash.2d at (noting that the Washington Supreme Court has "generally upheld the validity of

5    releases").  For these reasons, a debt is discharged by accord and satisfaction when a debtor and

6    creditor agree to settle a claim by some performance other than that which is claimed due, and

7    the creditor accepts the substituted performance as full satisfaction of the claim.  *Northwest*

8    *Motors, Ltd. v. James,* 118 Wn.2d 294, 303, 822 P.2d 280 (1992) (citing 6 A. Corbin, *Corbin on*

9    *Contracts* § 1276, 115 (1962)).  An accord and satisfaction consists of: (1) a bona fide dispute;

10   (2) an agreement to settle that dispute; and (3) performance of that agreement.  *Ward v. Richards*

11   *& Rossano, Inc., P.S.*, 51 Wash.App. 423, 429 (1988).

12        Here, the elements of an accord and satisfaction are satisfied.  First, Kenneth A.

13   Dahlstedt, one of the Plaintiffs in this action, and a former board member of Pro-Fac, sought an

14   aggregate of $20,000,000 from Pro-Fac on behalf of Northwest cucumber farmers when the

15   contract with Bay Valley was terminated.  Dkt. # 107, Ex. L.  Ultimately, Pro-Fac offered

16   Plaintiffs far less than the amount initially requested.  Dkt. # 107, Ex. H.  Clearly, there was a

17   dispute as to the amount that Pro-Fac owed Plaintiffs in the wake of the cancellation of the 2005

18   Raw Product Supply Agreement.  Second, Plaintiffs admittedly entered into the Release

19   agreements in early 2008 in which they exchanged a promise not to sue Pro-Fac for claims

20   arising out of the Raw Product Supply Agreement in exchange for Pro-Fac's promise to pay

21   them a portion of the settlement it received from Bay Valley.  Dkt. # 107, Ex. H.  Third, there is

22   no dispute that Pro-Fac performed that agreement by paying Plaintiffs the amount promised.

23   Accordingly, the Release is properly construed as an accord and satisfaction regarding the

24

disputed claim between Plaintiffs and Pro-Fac in the wake of the cancellation of the 2005 Raw Product Supply Agreement.  The pre-existing duty rule is inapplicable in such case.

Since Plaintiffs have not met their burden of proving that Pro-Fac owed Plaintiffs a pre-existing duty to pass through any settlement received from Bay Valley in connection with the 2005 Raw Product Supply Agreement and, even if they had shown such a duty, it would not render the Release agreements void under the doctrine of accord and satisfaction, Plaintiffs' motion for partial summary judgment is DENIED.

### III. CONCLUSION

The Court, having read the briefing by both parties, the declarations and exhibits attached thereto, and the remainder of the record, hereby finds and ORDERS:

(1) Plaintiffs' motion for partial summary judgment (Dkt. # 89) is DENIED.

(2) The Clerk of the Court is directed to forward a copy of this order to all counsel of record.

Dated September 14, 2011.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE